UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS MATEO, : | |
| : | Civ. No. 22-547 (RBK) |
| Petitioner, : | |
| : | |
| v. : | **OPINION** |
| : | |
| STEVIE KNIGHT,[1] : | |
| : | |
| Respondent. : | |

**ROBERT B. KUGLER, U.S.D.J.**

I. **INTRODUCTION**

Petitioner Carlos Mateo, a federal inmate at FCI Fort Dix in New Jersey, is serving a 180-month sentence after having been convicted of conspiracy to possess with intent to distribute heroin. ECF No. 4-1 at 6. Before the Court is his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his disciplinary proceedings, which resulted in, *inter alia*, the loss of good-conduct time after he was found in possession of a cellular telephone. ECF No. 1. For the reasons below, the petition will be denied.

II. **BACKGROUND**

A. **Factual Background**

On December 12, 2013, Petitioner was sentenced in the United States District Court for the Southern District of Ohio to a 180-month term of incarceration after pleading guilty to conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and § 846. *See* ECF No. 4-1 at 6. Petitioner is scheduled to be released from federal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Stevie Knight, the warden of Federal Correctional Institution Fort Dix, is substituted for former wardens David Ortiz and Lamine N'Dyiaye.

custody in February 2026. *See* https://www.bop.gov/inmateloc/ (search "Carlos Mateo"; last visited January 23, 2024).

The disciplinary sanctions that are the subject of the current habeas petition arose from the following facts. On December 3, 2020, Petitioner was issued an incident report charging him with possession of a cellular telephone, which the report described as a violation of "Code 108"—"Possession of a Hazardous Tool." ECF No. 4-2 at 4, 8. The report, prepared by a Special Investigative Supervisor ("SIS") identified as "J. Bartell," described Petitioner's alleged violation as follows:

> On May 24, 2020 at approximately 6:40p.m., in the Satellite Camp/Unit 6695 the Unit Officer T. Hodges, discovered 1 black and blue cell phone with yellow tape covering a magnet attached to the back of the cell phone in the possession of inmate Tejada, Sixto Reg. No. 11971-082 in the B-wing bathroom.
>
> On October 27, 2020 at approximately 7:33 a.m., SIS Tech J. Bartell received the cell phone Extraction Forensic Report (FTD-20-0124) for this cell phone; an Investigation was initiated.
>
> On December 3, 2020 at approximately 1:10 p.m. while reviewing this report from the forensic lab, I discovered that on May 23, 2020 at approximately 1:43 UTC/"Universal Time Coordinated" or 8:43 p.m. this cellular phone device was used to place a to this number 347-990-6606. After searching Truview this number was found only to be connected to inmate Mateo, Carlos Reg. No. 67609-054; Financial Report for receiving monies from 04/06/2019 until 10/01/2020 from a [N.I.] . . . . This same outside person is also connected to inmate Mateo's approved phone list as "friend" and connected to his approved Visiting List.
>
> Based off the physical evidence from this report; the fact that inmate Mateo was housed at the Satellite Camp/Unit 6695 at the time the call was placed and the fact that inmate Mateo is the only inmate at FCI Fort Dix connected to this number. On December 3, 2000 at approximately 2:15 p.m. this Investigation concluded

>   that inmate Mateo possessed and used this cellular device and is being charged with possession of a hazardous tool.[2]

*Id.* at 8. The report indicates that a copy was delivered to Petitioner on December 3, 2020. *Id.*

Thereafter, a lieutenant identified in the records as "K. Smith" investigated the incident. *Id.* at 13. The report indicates that he advised Petitioner of his rights and gave him a copy of the report. *Id.* Petitioner also stated, "It wasn't me this just isn't right." *Id.* Petitioner did not request a witness or staff representative, and the report indicates that Petitioner "exhibited a poor attitude during the investigation." *Id.*

Petitioner appeared before a Unit Discipline Committee ("UDC") on December 4, 2020, and made the following comment: "I never used that man's phone." *Id.* at 8. The UDC referred the matter to a discipline hearing officer ("DHO") for further review. *Id.*

Also on December 4, 2020, Petitioner signed a form titled "Notice of Discipline Hearing Before the (DHO)," indicating that (1) he wished to have a staff representative and (2) he wished to call a witness—Sixto Tejada, the individual in whose possession the phone had been found— who would testify that Petitioner "never used his phone." *Id.* at 10. He was assigned "Case Manager Palm" as a staff representative. *Id.* at 10, 24.

Petitioner also signed a form titled "Inmate Rights at Discipline Hearing," acknowledging that he had been advised of various rights before the DHO, including: (1) the right to receive a written copy of the charges at least 24 hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided

---

[2] This narrative is reproduced here with grammatical errors from the original. It appears, among other errors, that the author of the report dropped a word and intended to write "placed a call to this number," rather than "placed a to this number." The initials "N.I." refer to the "outside person" who was on Petitioner's approved phone list.

3

institutional safety would not be jeopardized"; (4) the right to present a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; (6) the right to receive written notice of the DHO's decision and the facts supporting the decision; and (7) the right to appeal. *Id.* at 9.

The record indicates that Petitioner appeared before the DHO on January 15, 2021. *Id.* at 4. It appears he waived staff representation and the presence of an inmate witness at the hearing, as handwritten across the DHO Hearing form is a notation stating that "Carlos Mateo waived staff rep" and "waived inmate witness." *Id.* at 11. The notation appears to be signed by Petitioner and "J. Darden DHO." *Id.* at 11. At the hearing, Petitioner was advised of his rights, stated he understood them, and provided the following statement: "I am not guilty." *Id.* at 4. He did not cite procedural issues. *Id*. As documentary evidence, Petitioner provided a written statement from inmate Tejada stating: "Carlos Mateo never used the phone I got caught with." *Id.* at 4. The witness that Petitioner had requested before the hearing was not called because: "The DHO considered the Notice of Discipline Hearing before the DHO Form BP-S294.052 signed by inmate Mateo annotated with his signature that he waived the Staff Representative and inmate witness before commencing with the hearing." *Id.* at 4.

In addition to the incident report and investigation, the DHO considered the following documentary evidence: (1) the photograph of a black Samsung cell phone that was recovered "during a routine search by staff on May 24, 2020," that was "linked to Tejada," and was used to place a call to "a number that was identified as a friend of [Petitioner] and is on his approved phone list"; (2) memorandum of staff; (3) the U.S. Department of Justice extraction report; (4) the Truview phone number center report; and (5) Tejada's handwritten statement. *Id.* at 5 (capitalization omitted).

4

The DHO determined that Petitioner failed to "present sufficient evidence to refute the charge," and found, "based on the greater weight of the evidence," that Petitioner committed "the prohibited act of Possession of a hazardous tool." *Id.* at 6–7. At the outset, the DHO noted that he considered "the Notice of Discipline Hearing before the DHO Form BP-S294.052 signed by [Petitioner] annotated with [his] signature that [he] waived the Staff Representative and inmate witness [he] requested during the UDC Review," which "was acknowledged with [Petitioner's] signature, prior to the DHO Hearing." *Id*. He then specified that his decision was based on (1) SIS Tech J. Bartell's report, (2) Petitioner's statement that he is not guilty, and (3) the photograph depicting the black Samsung cell phone. *Id*. The DHO explained his decision as follows:

> The DHO considered your statement, and denial of committing the prohibited act described in Section 11, however feels you are providing the DHO with some inaccurate information. The DHO feels your witness provided the DHO with inaccurate information in order for you [to] not accept responsibility for your actions. You were not able to provide the DHO with any significant evidence to corroborate your claim of the reporting staff members were [sic] not being truthful in reference to you[r] possession [of] a hazardous tool, as reported in the section 11 narrative of the incident report and photo of the hazardous tool. Based upon the reporting staff members' eyewitness account of your behavior, your observed/reported behavior/actions met the threshold for possession of a hazardous tool as described above. The DHO gave greater weight to the staff members' eyewitness account of the incident. Based on the evidence submitted in reference to this incident report, your reported actions met the threshold for possession of hazardous tool phone as described above.

*Id.* at 6; *see also id.* (finding Petitioner "was unable to provide the DHO with any significant/credible evidence to corroborate [his] claim of not utilizing a hazardous tool while at FCI Fort Dix, New Jersey").

The DHO disallowed 41 days of good conduct time, and imposed a $500 fine and 720 days' loss of phone privileges, determining that these sanctions were appropriate because "[p]ossessing a hazardous tool significantly threatens the health, safety and welfare, of not only

5

[Petitioner], but of all persons" at FCI Fort Dix. *Id.* at 7. The DHO explained that "[p]ast evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct." *Id.* Moreover, the DHO "considered [Petitioner's] continued disruptive behavior," his "willingness NOT TO ACCEPT full responsibility for [his] actions," "the seriousness of this particular prohibited act infraction," "[t]he fact there is a zero tolerance for inmates to possess hazardous tools in a Correctional Setting," and "the fact this is [Petitioner's] second Greatest Severity (100 level) incident report committed in the 24 month time period for REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL." *Id.* (emphasis in original). Given this, the DHO found that "[c]learly previous sanctions have not deterred [Petitioner] from engaging in this type of disruptive behavior"; "therefore the DHO imposed slightly higher sanctions." *Id.*

Petitioner was provided a copy of the report on February 9, 2021, and was advised that he had the right to appeal within 20 days. *Id.* Respondent does not dispute that Petitioner thereafter exhausted his administrative remedies. *See* ECF No. 4-1 (Decl. of Federal Bureau of Prisons ("BOP") Legal Assistant Corrie Dobovich) at 3 ¶ 7 ("Administrative remedy records reveal on July 28, 2021, Petitioner exhausted his remedies with respect to the instant disciplinary proceeding . . . .") (citing *id.* at 26–31 (administrative remedy appeals)).

Approximately two weeks after the DHO Report was completed, on February 12, 2021, the BOP expunged Mateo's prior Greatest Severity Level incident report. ECF No. 1-2, at 22. It appears that Petitioner sought to have his sanctions revised in light of this new information; however, in correspondence dated May 21, 2021, DHO Darden declined to do so, stating, in relevant part:

> This is a response for the request to staff dated on May 18, 2021, wherein you
> state that you are requesting that sanctions imposed from the results of the hearing

6

> conducted for the incident report No: 3455008 where in you were found guilty of prohibited act code 108 Possession of a hazardous tool [sic].
>
> Upon review of your request, this office has discovered that you were sanctioned appropriately, even though the frequency of your sanctions were increased because you received (2) greatest severity incident reports within a twenty four month period. One of the incident reports were [sic] expunged and removed from your chronological record. At this juncture the office believes the sanctions were appropriate and imposed within policy guidelines.

*Id.* at 11.

### B. The Habeas Petition

Petitioner, proceeding pro se, filed this § 2241 petition in February 2022. ECF No. 1. He argues that the BOP violated his right to adequate notice of the allegations against him when the DHO refused his request for "further documentary evidence" regarding whether the picture of the black cell phone presented at the DHO hearing was the same cell phone identified in the incident report. ECF No. 1-4 at 1–2. Specifically, he sought evidence that "demonstrated chain of custody and the forensic reports mentioned in the incident reports[] in order to explore whether or not the evidence presented at the hearing was in fact the same as the incident report and further, to verify if there were any other contrary evidence that would be exculpatory in nature." *Id*. Petitioner further argues that the DHO's refusal to provide this information "deprived [him] of a meaningful opportunity to present questions to [his] witness, inmate Sixto Tejada," regarding Tejada's incident report and his "use of a black and blue phone with yellow tape and a magnet attached." *Id.* at 2 (emphasis omitted).

Petitioner also asserts that his due process rights were violated when the DHO refused his request for "a staff representative [to] be present and . . . allowed to" ask Tejada whether he had contacted N.I. with the cell phone recovered from Tejada. *Id.* at 2. Petitioner contends Tejada and N.I. had "common acqua[i]ntances from Brooklyn, New York and have personally known each other." *Id*. at 3. Petitioner alleges the DHO denied the request, stating that Petitioner

7

"should have asked for this testimony when [h]e first met with the staff representative" to obtain Tejada's written statement. *Id.* at 2. Petitioner alleges that, because he had been "perplexed" initially about the allegation that N.I.'s telephone number appeared in the cell phone recovered from Tejada, he had "not remembered" this information "at the time that Petitioner had met with the staff representative" to obtain Tejada's statement. *Id.* at 3. Petitioner "believes that Mr. Tejada's testimony would confirm that [Tejada] was indeed in contact with [N.I.]" and, "had the question been posed to [Tejada], he would have confirmed . . . that he called [N.I.] possibly to contact a family member that had not been responsive to his calls."

Petitioner further argues that these alleged due process violations support a finding that he was deprived of "a hearing before an impartial fact finder[,] that is[,] one whose mind was not already made up and who could give him a fair hearing." *Id.* at 4; *see also id.* at 5–6.

Respondent answered the petition in April 2022, arguing that the Court should deny the petition because (1) Petitioner was afforded due process (ECF No. 4 at 17–23); (2) the DHO's decision was supported by "some evidence," the applicable standard (*id.* at 24–26); and (3) the sanctions imposed were within the available range (*id.* at 26–29).

Petitioner replied in May 2022, arguing that (1) the DHO "was impartial [sic] . . . when he played the role of [DHO] and investigating officer by having Mateo waive his rights to [a] staff representative and material witnesses" (ECF No. 5 at 2); (2) the DHO "undermined the constructive possession doctrine" and the "some evidence" standard[] by deliberately rejecting Petitioner's witness statement as inaccurate" (*id.* at 5); and (3) "there was insufficient evidence to substantiate possession of the cell phone" because Petitioner "was connected to the 'Data' not the actual phone" (*id.* at 6).

For the reasons that follow, the Court will deny the petition.

8

### III. DISCUSSION

#### A. Applicable Law

"Federal prisoners have a liberty interest in statutory good time credits." *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); 18 U.S.C. § 3624(b)(1); *Vega v. United States*, 493 F.3d 310, 314 n.4 (3d Cir. 2007)). Thus, a prison disciplinary hearing that may result in the loss of good conduct time must provide at least the following due process safeguards:

> (1) at least twenty-four hours of advance written notice of the charges, (2) an opportunity to call witnesses and present documentary evidence, (3) assistance from an inmate representative if the charge involves complex issues or if the prisoner is illiterate, and (4) a written decision explaining the evidence relied upon and the reasons for the disciplinary action."

*Campbell*, 808 F. App'x at 72 (citing *Wolff*, 418 U.S. at 563–67). "Technical errors, such as a failure to meet the requirements of standard BOP procedure, will not provide a basis for habeas relief, and any alleged denial of [d]ue [p]rocess will suffice to overturn a disciplinary proceeding only where those errors were, in fact, prejudicial." *Jones v. Merendino*, No. 23-89, 2023 WL 8295274, at *2 (D.N.J. Dec. 1, 2023) (citing *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012); *Wilson v. Ashcroft*, 350 F.3d 377, 380–81 (3d Cir. 2003)).

Inmates are also entitled to a "proceeding before an impartial decision-making body." *Campbell*, 808 F. App'x at 72. To that end, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592)); *see also Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) ("the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body") (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974).

9

"Where a prisoner's rights have been respected, a prison disciplinary finding will stand on habeas review so long as it is supported by 'some evidence in the record.'" *Jones*, 2023 WL 8295274, at *2 (quoting *Campbell*, 808 F. App'x at 72). This standard "is minimal and 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id.* (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

### B.  Analysis

Petitioner contends that his due process rights were violated because the DHO (1) refused his request for evidence regarding whether the picture of the black cell phone presented at the DHO hearing was the same cell phone identified in the incident report (ECF No. 1-4 at 1–2); (2) refused his request for a staff representative to ask Tejada whether he had contacted N.I. with the cell phone recovered from Tejada (*id.* at 2); and (3) was not impartial "when he played the role of [DHO] and investigating officer by having Mateo waive his rights to [a] staff representative and material witnesses" (ECF No. 5 at 2). Petitioner also argues that the evidence does not support the DHO's determination that Petitioner possessed a cell phone. *Id.* at 5–6. The Court rejects these arguments.

First, the claim that the DHO was not impartial is without merit. As explained above, "due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the prisoner's case." *Redding*, 252 F. App'x at 491 (citing *Wolff*, 418 U.S. at 592). Petitioner has made no allegation and presented no evidence that the DHO was involved in the investigation or prosecution of his case, and Petitioner's waiver at the DHO hearing of his rights to a staff representative and witnesses does not amount to involvement by the DHO in the investigation or prosecution, and is not evidence of bias. Indeed, there is no

10

indication in the record—and Petitioner makes no claim—that his waiver was not voluntary. He has therefore failed to demonstrate that the DHO was not impartial. *See*, *e.g.*, *Wall v. Bledsoe*, No. 10-0159, 2011 WL 810174, at *1 (M.D. Pa. Mar. 2, 2011) ("Petitioner is entitled to an impartial disciplinary tribunal, which excludes only those officials who have direct personal involvement in the circumstances underlying the charge.") (citations omitted); *Ali v. Nash*, No. 05-3205, 2006 WL 932341, at *6 (D.N.J. Apr. 11, 2006) (rejecting petitioner's bias claim where "the DHO was not involved in the investigation or circumstances underlying the charge," and there was "nothing in the record to support [Petitioner's] general contention that the DHO was not fair or impartial, or abused his authority during the disciplinary proceedings").

To the extent Petitioner argues that the DHO's adverse determination is itself evidence that the DHO was biased, the argument fails. A decision for or against a party, without more, is not evidence of bias, and a "claim of general bias" does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," sufficient to demonstrate partiality. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *see also Jacques v. Ortiz*, No. 20-1559, 2022 WL 392858, at *9 (D.N.J. Feb. 9, 2022) ("Petitioner appears to allege that the DHO's fact finding decisions show that the DHO was biased. . . . Petitioner's 'evidence' in support of this claim are merely his disagreements and displeasure with the DHO's reasoning and decisions. . . . [T]he DHO considered Petitioner's evidence and did not assign it as much weight as Petitioner believed was appropriate. Accordingly, Petitioner has failed to demonstrate that the DHO was not impartial, and Petitioner is not entitled to habeas relief on this claim.") (citations omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to

prove a due process violation"). Thus, Petitioner's claim that he was denied due process on the basis that the DHO was biased must be rejected.

Second, Petitioner's claim that he was denied due process because the DHO refused his request for "further evidence" regarding the cell phone—i.e., evidence that "demonstrated chain of custody and the forensic reports mentioned in the incident reports[]" (ECF No. 1-4 at 1–2)—is also without merit. As an initial matter, the record does not reflect that Petitioner sought such evidence prior to or during the hearing. *See Alomar-Baello v. Knight*, No. 21-1033, 2024 WL 35234, at *7 (D.N.J. Jan. 2, 2024) ("There is no evidence that Petitioner sought to present documentary evidence and was denied the opportunity to do so. . . . Petitioner has thus failed to demonstrate a due process violation on the basis that he was prevented from presenting documentary evidence."); *Williams v. Warden of FCI McKean*, No. 19-172, 2021 WL 2810052, at *3–4 (W.D. Pa. July 6, 2021) (no due process violation where there was "no evidence in the record to support the averment, contained only in Petitioner's legal briefs, that he actively sought this evidence prior to or during his DHO hearing" and Petitioner "raised no issues about the disciplinary process" at the time of his hearing); *Bacon v. Ortiz*, No. 19- 11023, 2021 WL 1138137, at *6 (D.N.J. Mar. 25, 2021) (rejecting due process claim where Petitioner asserted in his memorandum of law that he "asked for a forensic phone search to find out if the phone could be linked" to him but failed to show that his request appeared "anywhere in the record"); *Willis v. Zickefoose*, No. 11-2077, 2012 WL 2076827, at *9 (D.N.J. June 8, 2012) (rejecting petitioner's claim that the DHO denied his requests to view video evidence when the petitioner "failed to request that the DHO review the videotape of the incident, and there is no material evidence to support a claim that Petitioner ever made such a request at any time before or during his DHO hearing"); *Laor v. Fed. Bureau of Prisons*, 2009 WL 1410728, at *6 (D.N.J. May 15,

2009) (concluding that the inmate-petitioner was not denied an opportunity to present documentary evidence at his disciplinary hearing because "there [was] no indication in the DHO Report that he made any specific request[s] for documents that were denied").

Even if Petitioner had made a timely request for the evidence, however, the record reflects that the DHO did, in fact, consider the evidence Petitioner alleges he requested. Specifically, the DHO packet related to the incident contains, *inter alia*, the chain of custody log for the phone (ECF No. 4-2 at 14), a photo of what appears to be the front of the phone (*id.* at 16), a staff memorandum relating to the discovery of the phone in Tejada's possession (*id.* at 15), the U.S. Department of Justice extraction report (*id.* at 17–20), and the Truview phone number center report (*id.* at 21–23). *See also id.* (Decl. of DHO Jermaine Darden) at 1–2 ¶ 4 ("I have reviewed the DHO packet for Incident Report number 3455008, involving inmate Carlos Mateo . . ." and "confirm the truth and accuracy of the records attached thereto."). Given this, Petitioner has not established he was prejudiced by the DHO's alleged failure to consider "further evidence" related to the cell phone. He has thus failed to establish a violation of his due process rights on this ground.

Third, Petitioner's claim that he was denied due process because the DHO refused his requests for a staff representative to question Tejada is likewise without merit. Notably, the record does not reflect that Petitioner sought a staff representative to question Tejada about the phone or the call to N.I; rather, it indicates that Petitioner declined a staff representative and witnesses at his DHO hearing. ECF No. 5 at 11; *see Pisciotta v. N'Diaye*, No. 21-20573, 2023 WL 3749981, at *7 (D.N.J. June 1, 2023) (no due process violation where "Petitioner declined a staff representative at the hearing" and "the documented record contradicts Petitioner's assertion that he requested witnesses for his hearing").

13

Even if Petitioner had timely requested a staff representative to question Tejada, however, the testimony Petitioner sought to elicit would have been duplicative of Tejada's statement, which the DHO considered in rendering his opinion. *Id.* at 4. Indeed, Petitioner sought to establish via Tejada's testimony that Petitioner did not call N.I. from the phone found in Tejada's possession. Tejada's written statement that Petitioner "never used the phone Tejada got caught with," however, accomplished that goal. ECF No. 4-2 at 4. In short, given that Tejada's statement was obtained, made a part of the hearing record, and considered by the DHO, and was duplicative of the live testimony Petitioner sought to introduce, Petitioner has failed to establish that he was prejudiced by consideration of Tejada's written statement in lieu of his live testimony. *See Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) ("Prison officials have broad discretion in administering a disciplinary hearing, and it is not a denial of due process to deny an inmate an opportunity to present witnesses 'whose testimony would be irrelevant, repetitive, or unnecessary.'") (quoting *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); internal citation omitted); *Moneyham v. Ebbert*, No. 16-1311, 2018 WL 4087555, at *3 (M.D. Pa. Apr. 10, 2018) ("[T]he DHO's failure to call Lau to testify *personally* instead of relying on a written statement does not constitute a violation of due process because Lau's testimony would have been duplicative of his written statement.") (emphasis in original), *report and recommendation adopted*, 2018 WL 4051746 (M.D. Pa. Aug. 24, 2018); *Candelario v. Vasquez*, No. 06-093, 2006 WL 3431827, at *3 (S.D. Ga. Nov. 28, 2006) (where inmate's "statement had previously been taken as a part of the investigation" there was no due process violation because the "testimony would have been repetitive and unnecessary"). Accordingly, Petitioner has failed to establish that his due process rights were violated based on the absence of Tejada's live testimony.

Petitioner received notice of the charges and was provided an opportunity to request witnesses and present evidence. ECF No. 4-2 at 4, 8, 11. He received a preliminary hearing before the UDC (*id.* at 8), a final hearing before an impartial DHO (*id.* at 4–23), declined a staff representative and witnesses at his DHO hearing (*id.* at 11), presented Tejada's statement as documentary evidence for the DHO's consideration (*id.* at 4), and was provided a statement of reasons for the DHO's decision (*id.* at 6–7). *See Wolff*, 418 U.S. at 563–67 (requiring an impartial decision-maker, advance notice in writing of the charges, an opportunity to call witnesses and present evidence, assistance from an inmate representative, and a written decision). Thus, Petitioner received the procedural protections he was due. *See Jones v. Merendino*, No. CV 23-89, 2023 WL 8295274, at *3 (D.N.J. Dec. 1, 2023) ("Petitioner clearly received notice of the charges the day after the incident, was provided an opportunity to request witnesses and submit statements by his proposed witnesses, as well as his own statement, and declined a staff representative. He received a preliminary hearing before the UDC, and a final hearing before a DHO, and was provided a statement of reasons for the DHO's decision. Thus, Petitioner received all of the procedural protections to which he is due, and his Due Process rights were not violated during the prison disciplinary proceedings"); *Bacon*, 2021 WL 1138137, at *4 (DHO hearing met the *Wolff* requirements where: "Petitioner received notice of the charges . . . the same day the incident report was written. The next day, as evidenced by his signature on both documents, Petitioner received a DHO Hearing Notice and a Notice of Inmate Rights. Petitioner waived his right to have witnesses or a staff representative present. Six days later, . . . Petitioner attended the DHO hearing, where he was again read his rights and verbally waived his right to call witnesses or request a staff representative. Based on the evidence in the record – the incident report, Petitioner's statement, an officer memorandum, and photos of the cell phone –

the DHO determined that Petitioner possessed the cell phone and imposed sanctions accordingly.") (citations omitted). On this record, Petitioner has failed to establish a violation of his due process rights.

Turning to the DHO's decision, the Court finds that his determination Petitioner committed the prohibited act of "possession of a hazardous tool" (ECF No. 4-2 at 6) was supported by "some evidence." *Hill*, 472 U.S. at 447; *see also* id. at 455–56 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."); *Denny v. Schultz*, 708 F. 3d 140, 140 (3d Cir. 2012) ("a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause") (quoting *Hill*, 472 U.S. at 455–56). Specifically, in finding that Petitioner possessed a cell phone, the DHO found credible SIS Bartell's statement that: (1) a cell phone was found in the possession of inmate Tejada; (2) the extraction report indicated that a call was placed to a phone number later found to be N.I.'s number; (3) the Truview report revealed the number "was found only to be connected to" Petitioner, as it appeared on his approved phone and visitor lists; and (4) Petitioner was housed in the same unit as Tejada on the date on which the call was placed to N.I. ECF No. 4-2 at 6. The DHO did not find Petitioner's denial credible, and noted his concern that Petitioner was "unable to provide the DHO with any significant/credible evidence to corroborate [his] claim of not utilizing a hazardous tool while at FCI Fort Dix, New Jersey." *Id*.

This conclusion is supported by decisions of other courts, which have found that a phone number recovered from a cell phone meets the "some evidence" standard where the same number was on the petitioner's approved phone list. *See, e.g.*, *Robinson v. Moser*, No. 18-235, 2020 WL 4925689, at *4 (W.D. Pa. Aug. 21, 2020) ("Here, there was 'some evidence' to support

the DHO's finding that Petitioner committed the prohibited act. [The forensic] analysis showed that three numbers on the phone appeared only on Petitioner's approved telephone list . . . . Petitioner did not dispute that the numbers matched those on his approved list, only that he used or possessed the phone, but his argument that he shared those numbers with someone else who put them in the phone was not corroborated by any supporting testimony or evidence. Thus, the DHO reasonably concluded that Petitioner committed the prohibited act and his decision comports with the minimum requirements of procedural due process standards."); *Fernandez v. Hollingsworth*, No. 15-7094, 2018 WL 2278097, at *2 (D.N.J. May 18, 2018) ("While the cell phone in question was not found within Petitioner's possession, courts have found that the presence on a cell phone of a number which *only* appears on a particular inmate's approved phone list constitutes 'some evidence' that such inmate possessed the cell phone in question.") (emphasis in original).[3]

---

[3] *See also Cueto v. Rothman*, No. 14-855, 2017 WL 1709314, at *4 (N.D. Ala. Apr. 17, 2017) ("[T]here was 'some evidence' in the record to conclude Cueto had constructive possession of the cellphone . . . . Based on the Account Telephone Number List, Cueto had previously had the phone number found in the cellphone's memory listed on his approved number list"; further, "no other inmate but Cueto had any connection to the phone number."), *report and recommendation adopted*, 2017 WL 1650033 (N.D. Ala. May 2, 2017); *Burns v. Hollingsworth*, No. 13-5485, 2014 WL 1117932, at *2 (D.N.J. Mar. 20, 2014) (the DHO's decision met the minimally stringent "some evidence" standard because the phone number found on the cell phone was only on petitioner's approved list) (citations omitted); *Briggs v. Quintana*, No. 13-330, 2014 WL 320591, at *5 (E.D. Ky. Jan. 29, 2014) (finding "some evidence" where "the fact that the telephone number dialed from the cell phone found in the ice machine belonged to Briggs' sister; and the fact that this very same telephone number was on Briggs' approved phone list and *not* on the approved phone list of any other FCI–McKean inmate") (emphasis in original); *Zebrowski v. Gutierrez*, No. 11-9254, 2013 WL 6709762, at *13 (C.D. Cal. Dec. 11, 2013) ("The federal courts repeatedly have found that evidence of the sort involved here—a cell phone discovered outside of the inmate's immediate presence but containing only evidence tying it to a phone number that appears only on the inmates approved phone list—is sufficient to satisfy the 'some evidence' standard.")); *Conde-Rodriguez v. Adler*, No. 09-2241, 2010 WL 2353522, at *8 (E.D. Cal. June 9, 2010) ("Even if no one ever observed Petitioner personally possessing the telephone, the record nevertheless contains some independent evidence . . . to support the finding, namely, the photographic evidence of the telephone equipment and numbers . . . and the fact that the telephone contained a number from Petitioner's approved call list.")

To the extent Petitioner argues the "some evidence" standard is not met because the "black and blue cell phone with yellow tape covering a magnet attached to the back of the cell phone in the possession of inmate Tejada" (ECF No. 4-2 at 8) may not be the same cell phone as the "black in color Samsung cellular phone" referenced in the DHO report (*id.* at 6), the argument is without merit. As an initial matter, the photograph of the cell phone the DHO considered appears to be of the front of the phone. *Id.* at 5, 16. This may account for the discrepancy in the descriptions. In any event, as explained above, the photograph of the phone was not the only evidence the DHO considered in rendering his decision. Indeed, as noted by SIS Bartell, the phone found in Tejada's possession was used to place a call to N.I's phone number, a number that "was found only to be connected to [Petitioner]." *Id.* at 8; *see also id.* (Petitioner "is the only inmate at FCI Fort Dix connected to this number"; "[t]he number was "connected to [Petitioner's] approved phone list as a 'friend' and connected to his approved Visiting List."). Moreover, Petitioner was housed in the same unit as Tejada on the date the call to N.I. was placed. There was thus "some evidence" sufficient to support a finding that Petitioner possessed the cell phone.

To the extent Petitioner argues that the standard is not met because the DHO "deliberately reject[ed] Petitioner's witness statement as inaccurate" (ECF No. 5 at 5), the argument fails. The Court need not "re-weigh the evidence, or re-assess the credibility of [Petitioner's] defense." *Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010); *see also Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) ("the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence") (quoting *Hill*, 472 U.S. at 455–56). Rather, the Court need only find that the DHO's "decision had 'some basis in fact.'" *Denny*, 708 F.3d at 145. Here, the facts that (1) Petitioner was the only

inmate at FCI Fort Dix connected to N.I.'s number, and (2) the call to that number was placed on a date during which Petitioner was housed in the same unit as Tejada, support the DHO's conclusion that Petitioner was guilty of violating Code 108. Moreover, as the DHO explained in his report, he did not credit Tejada's statement. Instead, he determined that Tejada "provided the DHO with inaccurate information in order for [Petitioner to] not accept responsibility for [his] actions," and concluded that "the greater weight of the evidence" supported a finding that Petitioner committed the prohibited act of "Possession of a hazardous tool." ECF No. 4-2 at 6. Thus, the DHO's finding that Tejada's statement lacked credibility supports the DHO's finding of guilt. Applying the highly deferential "some evidence" standard, for the reasons above, the Court rejects Petitioner's evidentiary challenges to the DHO's conclusions.

Accordingly, as (1) Petitioner has failed to establish a violation of his due process rights during his disciplinary proceedings and (2) the DHO's finding that Petitioner violated Code 108 by possessing a cell phone was supported by "some evidence," the petition will be denied.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is denied. An appropriate order will follow.

Dated: January 23, 2024                                  s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge